Sanford L. KANE, as Administrator of the Estate of Eric Andrew Kane, deceased, Sanford L. Kane, individually, and Louise S. Kane, individually, Plaintiffs,

v.

CAMP TAKAJO, Morton J. Goldman, Elise R. Goldman, John H. Goldman, Paul Goldman, David M. Cohen, and Jeffrey A. Konigsberg, individually and as officers and/or directors of Camp Takajo, John Edgar Wideman and Judy Wideman, Defendants.

No. 87 Civ. 8996 (LFM).

United States District Court,
S.D. New York.

May 27, 1988.

Leonard L. Finz, New York City, for plaintiffs.

Wilson, Elser, Moskowitz, Edelman & Dicker by Glen Feinberg, New York City, for defendants Camp Takajo, Morton J. Goldman, Elise Goldman and Jeffrey Konigsberg.

Stern & Shapiro by Max D. Stern and Patricia Garin, Boston, Mass., and Stevens, Hinds & White by Richard Harvey and Aaron Frishberg, New York City, for defendants John Wideman and Judy Wideman.

## OPINION

MacMAHON, District Judge.

Defendant, Jeffrey A. Konigsberg ("Konigsberg"), moves, pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss the complaint. Plaintiffs cross-move, pursuant to 28 U.S.C. § 1447(c), to remand this action to state court.

## BACKGROUND

Defendant, Camp Takajo ("the camp"), is a summer camp for boys, located in Naples, Maine, and is owned and operated by defendant Morton Goldman ("Goldman").[1] Campers are divided by age into three separate groups: the "Warrior Program" is for second, third and fourth grade boys; the "Junior Program" is for fifth and sixth grade boys, and the "Senior Program" is for junior high and high school aged boys.[2]

---

1. *See* Affidavit of Goldman, sworn to February 9, 1988, at ¶¶ 1, 2 ("Goldman Affidavit 1").

2. *See* Affidavit of Jeffrey A. Konigsberg, sworn to February 9, 1988, at ¶¶ 4, 6 ("Konigsberg Affidavit 1").

During the summer of 1986, Goldman's grandson, Jacob Wideman ("Jacob"), and plaintiffs' son, Eric Andrew Kane ("Eric"), were enrolled together in the camp's Senior Program.[3] That summer, as part of the camp program, Eric, Jacob and two other boys participated in a cross-country trip to the western United States, and in August 1986 Eric died as a result of stab wounds inflicted by Jacob in a Flagstaff, Arizona, motel room.

In November 1987, plaintiffs commenced this action in the Supreme Court of the State of New York, Rockland County, which, upon motion by defendants, was removed to this court. The complaint alleges that defendants were negligent in the "ownership, operation, maintenance, control and supervision" of the camp and that such negligence led to Eric's death.[4]

Konigsberg, at the time of Eric's death, was an Associate Director of the camp and was Counselor-in-Charge of the Junior Program. He had no direct supervisory responsibility for Eric and Jacob and did not accompany the boys on the trip.[5]

## DISCUSSION

An action "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[6] Plaintiffs contend that removal here was improper and that we lack diversity jurisdiction because Konigsberg, like themselves, is a citizen of New York. Defendants argue that Konigsberg was improperly joined and that the complaint, as against him, should be dismissed.

3. Konigsberg Affidavit 1, *supra*, at ¶ 7.

4. *See* Complaint, at ¶ 69.

5. *See* Konigsberg Affidavit 1, *supra*, at ¶¶ 3, 5 and 10, and Affidavit of Konigsberg, sworn to April 4, 1988, at ¶ 12 ("Konigsberg Affidavit 2").

6. 28 U.S.C. § 1441(b).

7. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

There is a threshold question as to whether the law of New York or Maine is applicable here. In a diversity action, we must apply the conflicts of law rules of New York.[7] Under New York choice of law rules, the substantive law to be applied in a tort case is that of the state with the greatest interest in having its law applied to the specific issue raised in the litigation.[8] Here, the issue is the alleged negligence of defendants and, for purposes of this motion, the alleged negligence of Konigsberg in particular. We conclude that Maine is the state with the greatest interest in regulating Konigsberg's conduct. It is there that every summer hundreds of young boys attend the camp and are to varying degrees under the supervision and control of Konigsberg and the other defendants. Maine, therefore, has the greatest interest in safeguarding these campers and ensuring that defendants operate the camp in a prudent and responsible manner.

The Supreme Judicial Court of Maine has held that whether a person owes a duty of care to another is a question of law[9] and has defined "duty" as "a question of whether the defendant is under any obligation for the benefit of the particular plaintiff."[10]

Konigsberg is one of two camp employees with the title "Associate Director." He is not, however, an owner or stockholder of the camp and has no authority to set policy of any kind. He has no authority to hire or fire staff members. All such authority rests solely with Goldman, who is President, Director and Head Counselor of the camp.[11] The decision to permit Jacob to enroll at the camp was made by Goldman alone, and Konigsberg had no input into that decision.[12]

8. *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S. 2d 743, 749, 191 N.E.2d 279, 283 (1963).

9. *Joy v. Eastern Maine Medical Center,* 529 A.2d 1364, 1365 (Me.1987).

10. *Id.,* at 1365 (quoting W.L. Prosser, *Law of Torts* § 53 (4th ed. 1971)).

11. *See* Affidavit of Morton Goldman, sworn to April 4, 1988, at ¶ 9 ("Goldman Affidavit 2").

12. *See* Goldman Affidavit 2, *supra,* at ¶ 3.

Eric and Jacob were enrolled in the camp's Senior Program while Konigsberg was Counselor-in-Charge of the Junior Program. The programs were entirely separate, and Konigsberg had no responsibility for any of the activities, staff or campers in the Senior Program.[13] Konigsberg did not attend any meetings held by the staff of the Senior Program and took no part in any discussions regarding campers in the Senior Program.[14] Mike Roddy was the Counselor-in-Charge of the Senior Program. Bill Hammond was the Bunk Counselor of Eric and Jacob at camp and accompanied the boys on the trip. Konigsberg did not hire either of these individuals, nor did he supervise their daily camp activities.[15] Konigsberg did not participate in the planning or organizing of the trip, nor did he have any role in selecting the counselors and campers who took the trip.[16] Finally, it is undisputed that Konigsberg did not go on the trip.

There can be no serious question that a camp counselor, including Konigsberg, would have a duty to protect *any* camper who sought his help or who was in clear need of assistance. However, in light of the extremely remote connection between Konigsberg and the incident involving Eric and Jacob, we cannot agree with plaintiffs' contention that Konigsberg was negligent in his supervisory role and that such negligence resulted in Eric's death. In short, Konigsberg had no direct responsibility for Eric under the facts of this case. Nor did he have any reason to suspect that Eric was in danger. Were Konigsberg more directly connected with the Senior Program or were he present at the altercation between the boys, the result here might be different. However, the direct relationship necessary to give rise to Konigsberg's "obligation for the benefit of [Eric]"[17] is simply not shown here, where Eric was killed by another camper, thousands of miles from Konigsberg's presence and while both boys were on a trip over which Konigsberg had no control.

Plaintiffs have failed to state a claim against Konigsberg, and the complaint as against him must be dismissed on the merits. Joinder will be considered fraudulent when it is established "that there can be no recovery [against the defendant] under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard.[18] In light of our dismissal of Konigsberg, complete diversity of citizenship exists as to all remaining parties. We therefore have subject matter jurisdiction.

## CONCLUSION

Accordingly:

(1) Defendant Konigsberg's motion to dismiss the complaint as to him is granted in all respects.

(2) Plaintiffs' cross-motion to remand this action to the Supreme Court of the State of New York, Rockland County, is denied in all respects.

So ordered.

---

13. *See* Konigsberg Affidavit 1, *supra*, at ¶ 6.

14. *See* Goldman Affidavit 2, *supra*, at ¶ 5.

15. *See* Goldman Affidavit 2, *supra*, at ¶ 9.

16. *See* Goldman Affidavit 2, *supra*, at ¶ 12.

17. *Joy v. Eastern Maine Medical Center, supra,* 529 A.2d at 1365.

18. *Allied Programs Corp. v. Puritan Ins. Co.,* 592 F.Supp. 1274, 1276 (S.D.N.Y.1984), quoting *Parks v. New York Times Co.,* 308 F.2d 474, 478 (5th Cir.1962).